of America, Terry Jackson for the appellant, and Trashonda Treadwell for the appellee. Mr. Jackson, I see that you have reserved five minutes for rebuttal. Are you ready to proceed? Mr. Jackson, you're on mute. There we go. Terrific. Are you ready to proceed? Yes, ma'am. All right, please begin. Your Honor, may it please the court, if I miss something, we'll rely on our briefs and the record sites therein. The Federal Tort Claims Act is designed to be liberally construed as interpreted by the Supreme Court decisions relating to it and also 11th Circuit law. The Supreme Court decision that was cited in the brief, the Galbert case, or Galbert, I guess depends on your preference, is 499 U.S. 315. And it says, like most analysis, this isn't a constitutional issue, but it's a statutory. The statutes incorporate regulations. The regulations in this instance is the POM, the Postal Operations Manual. There's three provisions therein, the .511, the .523, and the .524 that are cited in the brief that are relevant. On a base level, if you're looking at how a normal postal carrier would effectuate the policy that's fixed, discernible, and readily available to them, you need look no further than that form 4056. It's on page two of my reply brief. And what it says is this. If you're delivering mail, the post, however it's configured, has to be at least 45 inches off the roadway, has to be of a certain height, should have a wood or metal post that's designed to break away. If it does not comply, there's a box on there that the postal carrier checks, highlights, sticks in the mailbox to inform the homeowner. And the postal carrier, in turn, takes that back to the postmaster of his local branch and says, look, fella or lady, we're not going to deliver your mail unless you remove this nonconforming post. Mr. Jackson, can I ask you, I know you're focusing on the internal procedures manuals of the post office. Would you concede that to establish an FTCA negligence claim, you must assert a violation of a duty created under state law? Yes. Okay. And would you also concede that the US has not waived sovereign immunity under the FTCA for alleged violations of federal regulations or internal policies? We allege that. And let me be clear. We cited the Roswell ordinances, which are embedded in the complaint and cited in our brief. The Roswell ordinances say this as it relates to mailboxes. You shall not have a post box that creates a hazardous to motorists on the right of way, and we incorporate the Georgia Department of Transportation regulations. You then go to OCGA 32-6-1 and OCGA 32-4-93A. More importantly, as I cited in my brief, Chapter 9 of the Georgia regulations, which is the Georgia right of way construction manual, is crystal clear and explicit that concrete, stone and brick mailboxes adjacent to the right of way are illegal, create a hazardous to motorists and shall be removed. The city of Roswell ordinances parrot and incorporate that. State law incorporates those regulations. And where GDOT got those is from a four decade old AASHTO manual that cites that mailbox installations, whether it's an old milk can filled with concrete, a brick, stone or concrete mailbox installation is illegal and creates a hazardous to motorists. That same manual that's part of the record in this case cites that there are 70 to 100 deaths each year on roadways in the United States where there are brick, stone and concrete mailboxes adjacent to the roadway that creates a hazard to motorists. That's state law 32-6-1, 32-4-93, that's for municipalities, Your Honor. Those create duties and burdens and what the postal manuals. Who creates a duty? Who? The landowner? Who created the hazard? Isn't that right? No, sir. It creates duties on both. It created a duty to the postal mail carrier? Yes, sir. And let me explain. How does it do that? Yes, sir. And let me explain. Just in theory, if you're just an engineer, you're driving down the road, you see a mailbox, it's hazardous. The person that put it there, the homeowner has a duty to remove it. A governmental entity that is aware of that right-of-way obstruction that creates a hazardous to motorists that controls the road wide aways and the mailbox installations has a duty to inform the homeowner and to remove it and to stop the delivery of mail. And how do you how do you assert that the Postal Service is linked to this? Why is it not? I mean, you could go after DOT under this rationale, too. Yeah, you can, Your Honor. And we are suing the DOT and the city of Roswell for this in a state court action related. You're also suing the homeowners, aren't you? Yes, sir. We sure are. How do you link the post office? Where is the post offices who delivers mail? Where is the duty for the post office to be on the lookout for for potential hazardous mailboxes in addition to performing its daily duties of delivering mail? The DOT 523 cited in our brief, 632.523, which are the postal regulations embodied in its operations manual states as follows, quote, But that's not state law. You've got to show us a duty created by state law on the part of the Postal Service. Not the Postal Service. I'm speaking for myself. Not the regulations. Yes, sir. And let me explain. In other words, the postal mail deliverer had a duty under Georgia law to do what? Under Georgia law, what it says is this. The Roswell Ordinances say you shall not have a hazard such as this adjacent to the. Now, what does it say about the letter carrier? The letter carrier. And if I'm if you'll allow me in the regulations of the postal operation. Oh, no, no, no. Not there. Under Georgia law. What are the what does the law say about it? It incorporates the postal manuals. If you go from the Roswell Ordinances, it says we incorporate what the U.S. The GDOT says are the rules for right of ways. The GDOT regulations state very explicitly. And I cited them and highlighted them in the record. Excerpts says this. We adopt the U.S. postal standards for posts, whether they're four by four wood or two inch ferrous metal posts designed to break away. And we adopt the U.S. postal standards in there that create a duty. So at most, though, the state the state law is referencing DOT regulations, which is referencing U.S. postal service manuals or regulations. And to me, that's suggesting a greater duty on the homeowner. I still don't see under state law where there is a duty on the postal service to be on the lookout for noncompliant mailboxes. Yes, ma'am. As cited in our brief, what it says in the postal manual, it says the local postmaster shall be knowledgeable of state law and local ordinances that create a duty for posts and to report those. The local and the local postal and the local postal carrier is required to be knowledgeable of those. Even the negligence of this case was that the mail carrier did not tell the homeowner to tear down the box. Is that the negligence? It's a contributing negligence, your honor. As you know, which is what it should have told the homeowner. Take down the mailbox. That's what we're not going to deliver your mail. Yes, sir. That's what form 40, 50, 60 says. Sorry, go ahead. OK, even even if that's true, then don't you run into a problem with the fact that that is a discretionary duty? No, ma'am. When the regulations, as the Supreme Court decisions, the 11th Circum precedent says where there are regulations and statutes, we're talking about state statutes, regulations in the form of the palm manual regulations in form of Chapter nine of the GDOT right away manual. Those create ministerial duties. They may have discretion about how to carry those out, but the act itself is not discretionary. It's ministerial, ma'am. And the case law is replete on that, as I've cited to it. And when Judge Toflat, where you were laughing there at the end, it's right there on form 40, United States. I wasn't laughing. What I was telling you is where is the that your theory is they were negligent and not telling the homeowner to take down the box. Yes, sir. And it's right there on the letter carrier. It's right there on their form. And he was exercising his discretion, wasn't he? No, sir. Oh, yeah. He has discretion to look at it and determine whether or not it meets the fixed standard in the regulations of being a concrete brick or stone installation. That's discretion is gone. It then becomes a ministerial duty to notify the homeowner and the postmaster and say, hey, Bob, I was delivering out on Route 31 today. Knucklehead Billy's got a milk can filled with concrete that violates our manuals. We need to tell him to take that down and put up a regulation post or he's going to have to come here, drive in town and get his mail. Mr. Jackson, Mr. Jackson, you have your time has expired, but you reserve some for rebuttal. Miss Treadwell. You may proceed. Thank you, Your Honor. I'm Assistant U.S. Attorney Trish Treadwell. I'm here on behalf of the Appalachian United States of America. And I do acknowledge that the facts in this case present a very tragic situation for the Smith family who lost two members of their family that day. But this is not a case with complicated legal issues, Your Honors. And as I will review, this court has had the opportunity to address both of the legal issues that are again before the court today. Plaintiff's claims were dismissed for lack of subject matter jurisdiction and for failure to state a claim under federal civil rules of procedure 12B1 and 12B6. And we ask this court to affirm that decision for two reasons. First, the United States is immune from suit, except as expressly waived by statute. Plaintiffs are seeking but do not qualify for the limited waiver of sovereign immunity provided by the Federal Tort Claims Act. Contrary to what the appellant's counsel mentioned, this is not something that is broadly construed. The precedent from the 11th Circuit says that it should be treated as a limited waiver and that it should not be broadly interpreted when the federal government chooses to waive its sovereign immunity as it does with the Federal Tort Claims Act. Plaintiffs have not identified a duty under Georgia law and certainly not one that was breached and for which a private person would also be liable. And those are the requirements in order to proceed under the Federal Tort Claims Act. As a result, they cannot establish better subject matter jurisdiction and the case should be dismissed for the same reasons the case should be dismissed under 12B6. And second, and as I will address this also, even if this court were to find that the Postal Service had a cognizable state law duty, the decisions whether to regulate mailbox posts, as opposed to the mailbox itself, and whether to contact homeowners regarding a dangerous post, those are discretionary decisions and therefore exempt under the discretionary function exemption. So we begin, of course, with the premise that the federal government is immune from suit under the doctrine of sovereign immunity. The Federal Tort Claims Act provides a strictly construed limited waiver that is supposed to provide recourse for ordinary torts already recognized under state law. As your honors have noted already today, a defendant can only be found liable if a comparable private party would likewise be liable under Georgia law. And here, plaintiffs have not identified a Georgia state law duty or an obligation that the Postal Service breached. A significant portion of plaintiff's briefing is spent discussing the Postal Operations Manual and related federal regulations. But federal regulations cannot form the basis of an FTCA claim because they are not state laws. This court addressed that issue very clearly in several cases, but particularly in Pate v. Oakwood Mobile Homes, which is cited in our brief. There, an employee of a mobile home manufacturer was injured on the job after his employer failed to correct the dangerous workplace conditions for which it had been cited by OSHA. Under its own regulations, OSHA was required to follow up with an employer to ensure the proper abatement of any safety conditions that it had found. It did not comply with its own guidelines. And Mr. Pate sued the United States for OSHA's failure to enforce its own citation. This court held that OSHA regulations themselves did not create a state law obligation. The remainder of that decision actually went well beyond what the plaintiffs in this case have argued because it addressed the Georgia state law doctrine of the Good Samaritan Doctrine. And even under that doctrine as a potential state law analog, the court still found that there was no allegation that the employer had relied on OSHA in failing to abate the safety violations. There was no allegation that OSHA created the hazardous condition. There was no allegation that OSHA had undertaken to alleviate the dangerous conditions, which might have created some type of obligation. And thus, the court held that the responsibility for the violation and for the safety issue was the employers and not the federal governments. Similarly here, the Postal Operations Manual clearly states that the ownership and control of mailbox posts lie with the homeowners. That is a very clear statement in the Postal Operations Manual. It's under Section 632.523. The Postal Service does not regulate mailbox supports in any way except for the purposes of carrier safety, not public safety, and delivery efficiency. But I guess your point is, even if the postal regulations said the Postal Service shall tell all homeowners whether their mailbox is dangerous, even then, your point is that that would not establish a Georgia duty, correct? Absolutely, Your Honor. And in addition to the fact that even under those circumstances, even if there was an absolute obligation under the federal regulation, this would not establish FTCA liability. But even assuming that there was an obligation, there is no express obligation in the Postal Operations Manual in any event. But even if there was, there would be no liability. Because also the Postal Service did nothing to add to any risk of harm to a third party and did nothing to address this at all, and the FTCA is not even implicated in the absence of a state law duty. Plaintiff argues that somehow the Postal Service guidelines are incorporated through state law, through the city and local ordinances, but there is no obligation on the Postal Service under those ordinances. As those ordinances are written, they address the location and construction of mailboxes. The Postal Service, in this case, did not own, did not locate, did not construct the mailboxes at issue. And so those ordinances don't even apply to the Postal Service. If there was any obligation or if any type of duty was created under those ordinances, it would only be possibly the obligation of the homeowners at best. Similarly, the American Association of State and Highway Transportation Officials and the Federal Highway Administration guidelines that plaintiff cites to are also not state laws. And so those also don't provide a duty. Furthermore, this court has, federal courts, not this court, they have not addressed this directly, but AASHTO guidelines and the Federal Highway Association guidelines do not create any type of state law obligation and are not mandatory on the Postal Service. We have cited in a brief the cases that refer to those AASHTO provisions specifically as not being mandatory upon the Postal Service. And if your honors have any other questions about that piece, I'm happy to answer them. Otherwise, I will address briefly the concept of the discretionary function exception, which if somehow this court were to determine that there was some sort of obligation created on behalf of the Postal Service, then the Postal Service is still not liable in this instance because we are talking about discretionary decisions that it made. And in this instance, there are two discretionary decisions. First is the decision to not regulate mailbox posts and supports, which the Postal Service has expressly stated that it would not do. And second is the discretionary decision whether or not to give notice to a homeowner if that homeowner has an unsafe or dangerous, potentially hazardous mailbox post or support. In the Postal Operations Manual, it says, carriers must report to the postmaster any existing mailboxes that no longer conform to postal regulations. That is the only mandatory language that plaintiff that Apple appellants have been able to cite to. That is that carriers must report to the postmaster. Again, going back to the original point, this is a federal obligation and not a state law duty. But that is the only mandatory language. There is no further mandatory language that says that the postmaster must send a notice to the homeowner or must help mail to a homeowner. That language does not exist. The language that is in the Postal Operations Manual only has mandatory language for notice to the postmaster, but not to any individual homeowners. Thus, that leaves that as a discretionary decision. And under the two-step discretionary function exemption test, first, we have a decision that is not mandatory, and thus it's left to the discretion of the Postal Service whether or not to give that notice. And second, we can tell from the Postal Operations Manual and from the regulations that exist that this is something where the Postal Service did consider different types of policy considerations. Because we know that they expressly noted that local and state governments might try to regulate this area of the potentially hazardous mailbox structures. And we also know that the Postal Office considered the safety of the carriers and the efficiency of being able to deliver mail. With those public policy considerations already expressly within the Postal Operations Manual, it certainly meets the two-step test for the discretionary function exception. And again, that is only if there is some type of state law obligation, which of course the government states, first and foremost, there is not. That is all the information I have to give to your honors today. If you have any questions, I'm happy to answer those. Thank you, Ms. Treadwell. Mr. Jackson, you have reserved five minutes for rebuttal. Yes, ma'am. On page 23 of 36 of our opening brief, your honor, and it refers to the Postal Operations Manual excerpts at docket 10-1 at 7. And I'm going to read a direct quote, creating the duty that they say doesn't exist to look at state and local laws. But this is exactly what it says. Some states have enacted laws that are more stringent and specific about the type of mailbox that may be used, comma, the post or support that must be used to mount the mailbox, comma, and the location of the delivery equipment, period. Regulations and recommendations published here might not reflect appropriate requirements for your area, period. And here's the kicker, your honor. When providing guidance to the general public concerning mailbox placement and replacement, comma, advise them not only of postal regulations, but also of any mailbox regulations that you know have been acted by state or local authorities, period, close quote. And that's docket 10-1, and it's cited at the top of page 23 of 36 of our initial brief. What that means is the postmaster needs to be aware of if your post office is in the city of Roswell, the postmaster needs to know what the local ordinances are. And that's when he walks backwards from the local ordinance incorporating the GDOT manual. The GDOT manual has been adopted as a regulation, which is, that's GDOT's purpose. That becomes Georgia law under the comp rules and regulations, and violation of that is negligence per se. What those regulations say is wood post four by four, metal post no greater than two inches in diameter of a ferrous metal so that it bends and breaks away. And if a postal carrier and the postmaster on the report on the form of 4056 is aware of it, they have to tell them to take it down. I have cited in my brief to the regulations where it says the postmaster and the whole purpose of this form that the U.S. Postal Service has created is your mail is going to be withheld until you get on page two of nine in my reply brief, top of the page. It's highlighted and signed by the postal carrier that unless you remedy the post and the mailbox that are not in conformity with state, local law, and our own ordinances, your mail is going to be suspended. That's what this form says. It's incorporated in the regulations. That regulation is a guideline in post. It's not discretionary. It's ministerial. So I disagree with the terms and tenets of what the Postal Service is trying to put down as their post in this matter. That post fails. As it relates to that, and I was a CPA before I was a lawyer and I was a military officer before that. As an engineer, we used to have something called the woodchuck manual. Combat engineers carried those in their BDUs and you'd pull it out and learn if you're going to span a river how to do so with a Bailey bridge or whether you're going to blow up a telephone pole or whether you're going to blow up a bunker. You pull that manual out. It's not walk around knowledge and you discern what the guidelines and posts and the directives to you are. That's how you do things. The same applies to a postal carrier. The palm is your Bible. You're given one on your first day as a postal employee. You're trained on it. The postmaster that matriculates and becomes a postmaster for a local branch has to be aware not only of that, but state law, local law, GDOT manuals, and in this case, the AASHTO, which has been around for four decades. It is very plain. No concrete bricks, stone mailboxes adjacent to the right-of-way. They're death hazards. They kill people. Take them down. The Postal Service can't take them down. What they can say is, if you don't remove this nonconforming postal installation, including this brick and stone edifice to your ego and having this grand home on the right-of-way in the city of Roswell, we're not going to deliver your mail. Mr. Jackson, your time has expired. Thank you, Your Honor. I appreciate your time today. Thank you, Mr. Jackson. Thank you, Ms. Treadwell. We have your case under submission.